UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RALPH JONES                                                                    PLAINTIFF

v.                              Case No.: 4-18-cv-741-JM

VAN TASSEL-PROCTOR, INC., et al                                DEFENDANTS

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between Ralph Jones ("plaintiff" or "Jones") and Van Tassel-Proctor, Inc. ("VTP") and Ted Van Tassel ("TVT") (collectively, "defendants"), subject to the approval of the Court.

WHEREAS, it is generally accepted that private settlements of FLSA claims may not be enforceable unless approved by the District Court or U.S. Department of Labor;

WHEREAS, the plaintiff initiated this action ("Civil Action") by filing a complaint on October 4, 2018 (Doc. 1), individually and as a representative putative collective and class action on behalf of others alleged to be similarly situated, but on December 4, 2018 plaintiff withdrew his Motion for Conditional Certification (Doc. 11), informing the Court that the parties had reached a settlement resolving the individual claims of the plaintiff in the present action alleging, among other things, violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et. seq.* and the Arkansas Minimum Wage Act, Ark. Code. Ann., §§ 11-4-201, *et. seq.* ("AMWA"); and

WHEREAS, on December 4, 2018, the Court entered an Order allowing withdrawal of the plaintiff's Motion for Conditional Certification (Doc. 16).   On December 4, 2018, the plaintiff filed a Notice of Settlement with regard to all claims of the plaintiff (Doc. 14).   The

plaintiff will also file a Stipulation of Dismissal dismissing all collective and class action claims in the case so that only the individual claims of the individual plaintiff are asserted in this action.

WHEREAS, it is the desire and intent of the plaintiff and the defendant, upon approval by the Court of this settlement or the entry of an order or opinion from the Court that approval is not necessary, to dismiss the present action with prejudice; and

WHEREAS, the defendants, among other things, deny any wrongdoing, do not admit or concede any actual or potential fault, damage, or liability in connection with any facts or claims that have been brought or could have or should have been brought against them in this Civil Action or otherwise, deny they owe unpaid wages or overtime compensation or any other amounts or benefits to the plaintiff (or any other alleged similarly situated persons), deny the claims ever asserted in this Civil Action, deny that they violated the FLSA, the AMWA, or any other law, rule, or regulation relating to the payment of compensation and maintains that at all times the plaintiff (and all other persons) was properly compensated, and deny they have any liability whatsoever; and

WHEREAS, TVT denies he is an employer under the FLSA or the AMWA; and

WHEREAS, the plaintiff and defendants have been represented by legal counsel involving the claims asserted in the Civil Action and any claims made that predate the filing of the Civil Action; and

WHEREAS, a bona fide dispute exists between the plaintiff and defendants under the FLSA and the AMWA, including without limitation, as to the amount, if any, of damages, including minimum or other wages and overtime claimed to be owing to the plaintiff; and

WHEREAS, the parties have engaged in adequate and complete settlement discussions, including exchanging positions on legal and factual issues and other supporting information. These settlement negotiations eventually led the plaintiff and the defendants to reach a settlement of a bona fide dispute which in turn has been formally reflected in this Agreement, and the

2

parties submit that the settlement reflected in this Agreement represents a fair and equitable settlement of disputed claims, and with the approval of this Court or the entry of an order or opinion from the Court that approval is not necessary, will fully and finally settle, resolve, and dismiss with prejudice this dispute and the plaintiff's claims; and

NOW, THEREFORE, in consideration of the mutual promises and agreements set forth herein, subject to the approval of the Court or the entry of an order or opinion from the Court that approval is not necessary, it is hereby stipulated and agreed by and between the plaintiff and the defendants that:

## I.      DEFINITIONS

The terms set forth below shall have the meanings defined in this Section wherever used in this Agreement and in all of its exhibits.

1.1     "Approval Date" means the date the Court enters the Approval Order or the date of the entry of an order or opinion from the Court that approval is not necessary.

1.2     "Approval Order" means any Order issued by the Court granting approval of the Settlement or the entry of an order or opinion from the Court that approval is not necessary.

1.3     The "Civil Action" means the above-captioned action.

1.4      "Plaintiff's Counsel" means Sanford Law Firm, PLLC.

1.5      "Court" means the United States District Court for the Eastern District of Arkansas, Western Division.

1.6     "Covered Period" means the period beginning three (3) years prior to the date the plaintiff commenced this Civil Action by filing the complaint herein, and continuing through and ending on the Approval Date.

1.7     "Defense Counsel" means Kutak Rock, LLP.

1.8     "Net Settlement Amount" means the total gross amount of $5,500.00, inclusive of all attorney's fees and costs.  Under no circumstances shall defendants'

3

maximum total settlement liability under this Agreement exceed the gross sum of $5,500.00.

1.9     "Payment Deadline" means the date that falls thirty (30) days after the Court approves this Settlement, the entry by the Court of an order or opinion that approval is not necessary, or the dismissal of the Civil Action with prejudice, whichever occurs last.

1.10    The "Parties" means plaintiff and the defendants.

1.11    The "Plan of Allocation" means the apportionment of the Net Settlement Amount, the methodology of which is described in Section 3.1 and Section 4.1.

1.12    (a)    "Released Claims" means any and all individual, derivative, representative or class wage and hour, wage payment, commission payment, or other related claims of whatever nature that the plaintiff, may have, directly or indirectly or in any representative capacity, against the defendants and any of the Released Parties including without limitation the claims asserted or that could have or should have been asserted in the complaint, whether known or unknown, unforeseen, unanticipated, unsuspected, or latent as a result of actions or omissions through and including the Approval Date, whether under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, including, but not limited to, the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, as amended, the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et. seq.,* including, without limitation, any and all claims, causes of action, rights, grievances, liabilities, liquidated damages, and damages for unpaid overtime, payment of compensation, payment of commission, payment of bonus, payment of  liquidated damages, unpaid wages, deductions, minimum wages, premium pay, travel time, method of payment calculation, failure to maintain records and provide information,  interest, litigation costs, attorney's fees, costs, injunctive or declaratory relief, or penalties related to overtime, missed meal periods, missed rest breaks, breach of contract, restitution, unjust enrichment, or

4

quantum meruit claims related to wage claims, related claims, the prompt pay laws of any state, and other alleged wage and hour violations, any claims that monies received from the Settlement are compensation or benefits eligible for retirement or other employee benefits plans of the Released Parties or related to the Employment Retirement Income Security Act (ERISA), and any other equitable or legal relief sought or allegedly due and owing by virtue of this Civil Action or the foregoing claims or causes of action.

(b)     In the case of the plaintiff, the term "Released Claims" shall include all rights and claims provided in section 1.12(a) and also include, without limitation, any and all individual, derivative, representative or class claims, causes of action, rights, liabilities, and damages under any other federal, state, or local law, whether arising from statute, executive order, rule, regulation, code, common law, or other source, including without limitation all actions sounding in tort, contract, and equity, and all claims or causes of action based on employment, termination of employment and/or any interaction with the Released Parties and the defendants that occurred prior to the Approval Date, including without limitation, discharge of any and all claims pertaining to a violation of, wrongful discharge, employment discrimination, failure to accommodate, harassment or retaliation, leave entitlement, including claims under Title VII of the Civil Rights Act, 42 U.S.C. Section 1981, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans With Disabilities Act, the Family and Medical Leave Act, breach of contract (express or implied), wrongful discharge, discrimination, retaliation, harassment, orientation, whistleblower, interference with contract, intentional or negligent infliction of emotional distress, defamation, promissory estoppel, detrimental reliance, negligence, or any other reason established by the common law or by federal, state or local laws, cases, statutes or regulations. Pursuant to the ADEA, the plaintiff enters into this Agreement knowingly and voluntarily of his own free will and with the intent to be bound hereby, he has carefully read this Agreement, he has had ample time to

4813-6298-1762.3

consider and study the terms and provisions of this Agreement before signing same, he fully understands the provisions and effect of this Agreement, he has not been forced, induced or coerced into entering into this Agreement, he understands he has the right to consult with an attorney of his own choosing prior to signing this Agreement, has been advised of this right, and has so consulted with an attorney. Plaintiff also acknowledges that this Agreement is written in a manner calculated to be understood by him, that he does not waive any rights or claims under the ADEA that may arise after the date of this Agreement, and he is waiving rights and claims in exchange for consideration in addition to anything of value to which he is already entitled.  Under the ADEA, plaintiff expressly acknowledges that he has been advised that he may take up to twenty-one (21) days in which to review the terms of this Agreement as it relates to his waiver and release of age-based claims under the ADEA and Older Workers Benefit Protection Act (or applicable age-based state law).   Plaintiff also understands he does not have to wait twenty-one (21) days to accept and sign the Agreement as it relates to his waiver and release of age-based claims under the ADEA and Older Workers Benefit Protection Act (or applicable state law), and if he executes this Agreement before the twenty-one (21) days have passed, the seven (7) day revocation period described hereafter below will begin upon signing. Plaintiff also understands that following his signing of this Agreement, he may revoke his acceptance of this Agreement as it solely relates to a release and waiver of age-based claims under the ADEA and Older Workers Benefit Protection Act (or applicable age-based state law), provided revocation is made within seven (7) calendar days of the date the plaintiff signed this Agreement.

(c)      Plaintiff agrees not to apply for or seek employment or re-employment with the defendants or the Released Parties at any time following his signature on this Agreement.  In the event that the plaintiff does apply for employment in violation of this provision, he agrees that he has no right or expectation to be hired or employed and that defendants or any Released Party has a legitimate, nondiscriminatory, non-retaliatory,

4813-6298-1762.3

and contractual reason to refuse him hire or, in the event he is mistakenly hired in contradiction of this provision, to terminate his employment after realizing such error and plaintiff acknowledges that, in doing so, defendants and the Released Parties are not discriminating or retaliating against him but are asserting their contractual rights hereunder.

1.13    "Released Parties" means Van Tassel-Proctor, Inc. and Ted Van Tassel, the defendants, all persons or entities named as a defendant at any time, or that could have or should have been named as a defendant, in the Civil Action, and their predecessors, successors, and present and former affiliates, parents, subsidiaries, common or related entities, insurers, related entities, officers, directors, owners, partners, managers, consultants, shareholders, board members, third party contractors, attorneys, agents, representatives, employees, and assigns, both current and former, including, without limitation, any investors, trusts, or other similar or affiliated entities and all persons acting by, through, under, or in concert with any of them, including any party that was or could have been named as a defendant in this action.

1.14    "Settlement" means this Confidential Settlement Agreement and Release and the terms outlined herein, including any and all exhibits or attachments hereto.

## II.    <u>**RECITALS AND AFFIRMATIONS**</u>

2.1    Plaintiff sued defendants alleging violations of the FLSA and the AMWA.  The plaintiff alleges, among other things, that defendants did not pay certain wages, compensation or benefits, and overtime compensation.  Defendants deny any and all liability to the plaintiff (or to any similarly situated individuals or any other person), and deny that they have any liability and further state that they have paid all persons or alleged or actual employees as required by the law for all hours worked, and at all times have acted in accordance with applicable federal, state, and local law.  TVT expressly denies he was ever an employer of the plaintiff as that term may be defined under applicable law.

7

2.2     Plaintiff's Counsel conducted a thorough investigation into the facts of this Civil Action.  Based on their investigation and evaluation, the Plaintiff's Counsel is of the opinion that the terms set forth in this Settlement resolve a bona fide dispute and are fair, reasonable, and adequate and in the best interest of the plaintiff in light of all known facts and circumstances, including the risk presented by the defenses asserted by defendants and the delays associated with the litigation process and an appeal.

2.3     It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Civil Action and which exist between them.

2.4     It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release by the plaintiff of the Released Claims against the defendants and the Released Parties.

2.5     Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Civil Action or any violation of any law or regulation.

2.6     This Agreement is a compromise of a bona fide and highly disputed claim and shall not be construed as an admission of liability or fault at any time or for any purpose, under any circumstances, by the Parties or the Released Parties.  The Parties further acknowledge and agree that neither this Agreement nor the Settlement shall be used to suggest an admission of fault or liability in any dispute that any of the Parties may have now or in the future with respect to any person or entity.  Neither this Agreement, anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

4813-6298-1762.3

III.   **ATTORNEYS' FEES, LITIGATION COSTS, AND SETTLEMENT ADMINISTRATION COSTS**

      3.1     Within thirty (30) days of the Approval Date, the date of dismissal of this Civil Action with prejudice, or the other conditions of this Agreement, whichever occurs last, defendants will pay Plaintiff's Counsel $2,200.00 for attorneys' fees (representing 40% of the Settlement Fund) and $500.00 for expenses and costs incurred by Plaintiff's Counsel in the prosecution of the plaintiff's claims in this matter, for a total of $2,700.00.   Sums paid to Plaintiff's Counsel shall be deducted from the Settlement Fund, and not in addition to the amounts in the Settlement Fund.   In his motion for approval of attorneys' fees, expenses, and costs, the plaintiff shall request the Court to require payment of the fees, expenses, and costs to Plaintiff's Counsel within thirty (30) days of the Approval Date.   Defendants shall not oppose the plaintiff's motion for approval of attorneys' fees, expenses and costs as represented herein.   Plaintiff Counsel shall provide an executed W-9 form and other forms as may be required within seven (7) calendar days of the Approval Date.   Defendant VTP shall issue an IRS Form 1099 for the attorneys' fees and expenses payment, and any and all taxes relating to the payments described in this paragraph shall be the sole responsibility of Plaintiff's Counsel.

      3.2     Except for the fees, costs, and other expenses set forth in this Section, the Parties shall bear responsibility for their own fees, costs, and expenses incurred by them or arising out of the Civil Action and will not seek reimbursement thereof from any Party to this Agreement or the Released Parties.

IV.   **ALLOCATION OF THE NET SETTLEMENT AMOUNT**

      4.1     Within thirty (30) days of the Approval Date, the date of dismissal of this Civil Action with prejudice, or the other conditions of this Agreement, whichever occurs last, the plaintiff will be paid as follows: (i) a check in the total gross amount of $1,350.00, less applicable withholdings and deductions for state and federal taxes, designated as wages for tax purposes and he will receive an IRS Form W-2 for this portion of the settlement payment and (ii) a check in the total gross amount of $1,350.00

and such payment will be designated as liquidated damages for tax purposes and he will receive an IRS Form 1099 for this portion of the settlement payment.

4.2     Defendants make no representations or warranties regarding the tax consequences of the settlement payments under this Agreement to the plaintiff, and assume no liability for plaintiff's tax obligations on same.   By accepting payment pursuant to this Agreement plaintiff agrees that he is solely responsible for his tax liability under federal, state, or local tax laws arising from the payments described above. As a condition to receiving payment, the plaintiff shall provide to defendant necessary taxpayer information and forms.

## V.     RELEASES AND COVENANT NOT TO SUE

5.1     By operation of this Agreement, the plaintiff, individually and on behalf of any class or group, his respective heirs, beneficiaries, designees, legatees, executors, administrators, successors-in-interest, and assigns hereby irrevocably and unconditionally forever and fully waives, discharges, and releases from, and covenants not to sue defendants and the Released Parties, for any and all of the Released Claims, whether known or unknown.

5.2     This release is intended to, and shall be effective as, a complete release and bar to all Released Claims by the plaintiff, including claims that any releasing person knows about or suspects, as well as those that the releasing person does not know about or does not suspect.   A releasing person shall be deemed to know the significance of this release and waiver of Released Claims as to unknown or unsuspected claims and his waiver of any protection against a release of unknown or unsuspected claims.

5.3     The plaintiff, covenants and agrees that (a) he will not sue or bring any action or cause of action, including by way of class or individual complaint, third-party claim, cross-claim, or counterclaim, against the defendants or any Released Party in respect of any of the Released Claims; (b) he will not initiate or participate in bringing or pursuing any class or collective action against the defendants or any of the Released

Parties in respect of any of the Released Claims; (c) if involuntarily included in any such class or collective action encompassing Released Claims, he will opt out or not opt-in the lawsuit if possible; and (d) he will not voluntarily and knowingly assist any third party in initiating or pursuing an individual, class or collective action suit in respect of the Released Claims.

5.4     The Release contained in this Agreement may be raised as a complete defense to bar any action, claim, or demand brought in contravention of this Agreement. In the event any such claim, action, or demand is brought or pursued in violation of this Release, any party seeking to rely on same shall provide written notice to the person bringing or pursuing such barred action, claim, or demand indicating the party asserting the Release believes the action, claim, or demand is barred by the Release.  The person bringing or pursuing such barred action, claim, or demand, shall have a reasonable opportunity to cure.  If the person bringing or pursuing such barred action, claim, or demand fails to cure, it shall indemnify and hold harmless the party against whom such action, claim, or demand is brought from and against any and all judgments, costs, and expenses arising therefrom (including but not limited to reasonable attorneys' fees and disbursements of counsel and other professionals and court costs incurred therewith), it being the intent that that the substantially prevailing party shall be entitled to indemnification from the substantially non-prevailing party involved in any such action.

5.5     Nothing in this Agreement shall bar any Party from bringing an action to enforce this Agreement in accordance with its terms.

## VI.    NON-ADMISSION

6.1     Defendants expressly deny any and all wrongdoing associated with the claims in this case and make no admission of liability.  Defendants deny all allegations and averments made or that could have been made or should have been made in this Civil Action and further deny any liability to the plaintiff, or any other person or entity. Defendants maintain they complied with all applicable federal, state, and local laws at all

11

times.  It is expressly understood and agreed by the Parties that this Agreement is being entered into by defendants solely for the purpose of avoiding the cost and disruption of ongoing litigation and any claims asserted in this Civil Action.  Nothing in this Agreement, the settlement proposals exchanged by the Parties, or any motions filed or orders entered pursuant to this Agreement, may be construed or deemed as an admission by defendants or any Released Party of any liability, culpability, negligence, or wrongdoing and this Agreement, including its provisions, its execution, and implementation, including any motions filed or orders entered, shall not in any respect be construed as offered or deemed admissible as evidence, or referred to in any arbitration or legal proceeding for any purpose, except in an action or proceeding to approve, interpret, or enforce this Agreement.  TVT denies ever being an employer of the plaintiff as defined under applicable law. Defendants consider it desirable this Civil Action and the claims alleged therein be settled upon the terms and conditions set forth in this Agreement in order to avoid further expense and burdensome, protracted litigation and to fully and finally put to rest the Released Claims.

6.2     The parties agree that enforceability of this Agreement is conditioned upon the Court approving this Agreement or the entry of an order or opinion from the Court that approval is not necessary.  The Parties agree that this Agreement is not meant to be, and will not be, construed as an admission that Defendants or any Released Party are liable in any manner.

6.3     For the sake of clarity, the protections and rights of this section VI shall also apply to and inure to the benefit of the Released Parties.

## VII.   DUTIES OF THE PARTIES TO OBTAIN COURT APPROVAL

7.1     In connection with the approval by the Court of the Settlement, and consistent with any direction provided by the Court, Plaintiff's Counsel and Defense Counsel will submit a proposed Order Granting Approval of Settlement for the Court's review and consideration, providing as follows:

(a)    Grant final approval to the Agreement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions; and

(b)    Dismiss the Civil Action on the merits and with prejudice and permanently bar the plaintiff from prosecuting against the defendant or any Released Parties any of the Released Claims; and

(c)    Retain jurisdiction to enforce the terms of the Agreement.

## VIII.  PARTIES' AUTHORITY

8.1    The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

8.2    All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations that preceded the execution of this Agreement, and this Agreement is made with the consent and advice of Plaintiff's Counsel and Defense Counsel, who have jointly prepared this Agreement.

## IX.  MUTUAL FULL COOPERATION

9.1    The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents, and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

## X.  SETTLEMENT OF DISPUTES

10.1    All disputes relating to this Agreement and its implementation shall be within the continuing jurisdiction of the Court over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

## XI.  AMENDMENTS/MODIFICATION

11.1    No waiver, modification, or amendment of the terms of this Agreement and/or its attachments shall be valid or binding unless in writing, signed by and on

behalf of all of the parties, and then only to the extent set forth in such written waivers, modifications, or amendments, and approved by the Court.

## XII.   ENTIRE AGREEMENT

12.1   This Agreement and its attachments constitute the entire agreement between the Parties concerning the subject matter hereof.  No extrinsic oral or written representations or terms shall modify, vary, or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other Settlement-related document, the Parties intend that this Agreement shall be controlling.

## XIII.   DISPUTE RESOLUTION

13.1   Any dispute, challenge, question, or the like relating to this Agreement shall be heard only by the Court, with those issues being reserved to the construction of this Agreement only.

## XIV.   COUNTERPARTS

14.1   This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

## XV.   NO THIRD-PARTY BENEFICIARIES

15.1   This Agreement shall not be construed to create rights in, or to grant remedies to, or to delegate any duty, obligation, or undertaking established herein to any third party as a beneficiary of this Agreement.

## XVI.   BINDING AGREEMENT

16.1   This Agreement shall be binding upon, and inure to the benefit of, the Parties and their affiliates, agents, employees, beneficiaries, heirs, executors, administrators, successors, and assigns.

4813-6298-1762.3

## XVII.  **VOIDING THE AGREEMENT**

17.1    In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason or the Court does not enter an order or opinion that approval is not necessary, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.

## XVIII. **CONFIDENTIALITY**

18.1    Defendants shall have the right to request, and the plaintiff will not oppose, that the Court treat this Agreement and the Settlement as confidential and to be filed under the seal of court.  Such request by defendants shall be made simultaneously with plaintiff's unopposed motion to approve FLSA settlement and supporting memorandum, and in the event of such request, plaintiff shall submit his unopposed motion under seal.  The failure of the Court to grant defendant's motion to file under seal shall not render this Agreement or the Settlement void.

18.2    Counsel for the Parties, as well as the plaintiff, shall make no public statement, announcement or press release regarding this Agreement or the Settlement nor initiate any contact of any kind with the press, nor initiate any other communications except with respect to counsels' respective clients, regarding this Agreement, the Civil Action, or the Settlement.  If counsel for any of the Parties or the plaintiff receives any inquiry regarding this Agreement or the Settlement, such shall make no comment. Except as expressly provided herein, the terms of this Agreement, the Settlement, and all discussions or matters involving same are to be considered and treated as strictly confidential.

18.3    Nothing herein is intended to limit or waive the confidentiality of the attorney-client privileged between counsel for any Party and their current clients with respect to this Civil Action, limit the ability of such counsel to make truthful representations to judicial authorities regarding the Settlement or this Agreement, limit

the ability of such counsel to communicate with their current clients, or limit the ability of the defendants to disclose the terms of the Settlement internally or to the other Released Parties, or limit any Party to communicate the terms of the Settlement with their spouse, an immediate member of their family, or tax preparer; provided, the person or party receiving information has been instructed as to the condifidenitalty provisions and confidential nature of this Agreement and the Settlement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Plaintiff:

Dated: February 5, 2019                          By_____
                                                         Ralph Jones

[Signature of Defendants on following page.]

16

Defendants:

Dated: ___02 | 13___ , 2019

By:  Van Tassel-Proctor. Inc.

Signature: _____

Name Printed: _TED VAN TASSEL_

Title: ___PRESIDENT___

Dated ___02 | 13___ . 2019

_____
Ted Van-Tassel

17